**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **JEFFREY STEPANOVICH,**<br><br>Plaintiff,<br><br>v.<br><br>**KEN CORBETT FARMS, LLC, A GEORGIA LIMITED LIABILITY CORPORATION,**<br><br>Defendant. | Civil Action No. 7:18-CV-186 (HL) |

## ORDER

Plaintiff Jeffrey Stepanovich brings this action against his former employer, Defendant Ken Corbett Farms, LLC, alleging that Defendant terminated his employment after learning of his cancer diagnosis in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"). Now before the Court is Defendant's Motion for Summary Judgment (Doc. 24). After reviewing the pleadings, briefs, and other evidentiary materials presented, the Court finds no genuine issue of fact exists as to any claim and **GRANTS** Defendant's motion.

**I.     BACKGROUND**

Defendant Ken Corbett Farms, LLC ("KCF"), is a Georgia farm owned by Ken Corbett. (DSMF ¶ 1).[1] The farm grows vegetables during two growing seasons. (DSMF ¶ 2). The Spring season runs from April until June, and occasionally into July. (Id.). The Fall season is from September through December. (Id.).

KCF hired Plaintiff Jeffrey Stepanovich as a produce salesman in 2011. (DSMF ¶ 2). Stepanovich was a seasonal employee and only worked during the Spring and Fall growing seasons. (DSMF ¶ 3). During the remaining months of the year, Stepanovich sold produce for other employers. (Id.).

KCF hired Stepanovich, in part, to teach Eric Bolesta, Ken Corbett's son-in-law, the produce sales business. (Doc. 26-1, p. 47, 49). Because Bolesta was new to the industry, he did not have his own client portfolio. (Id. at p. 53). Stepanovich gave a portion of his customers to Bolesta. (Id.). KCF later hired a third salesman, Jed Hunter, an experienced salesman with a developed customer base. (Id. at p. 50-51). KCF initially paid Stepanovich a salary. (Id. p. 36). KCF later changed its compensation structure and began paying each of the three produce salesman 1% of gross revenues. (DSMF ¶ 6).

---

[1] "DSMF" refers to Defendant's Statement of Undisputed Material Facts in Support of Summary Judgment. (Doc. 24-1). The cited paragraphs are those admitted by Plaintiff.

2

During the early years of Stepanovich's employment, he carried a greater sales load than the other two salesmen. (DSMF ¶ 16). As time progressed, the sales load equalized, and, at some point, Bolesta and Hunter's sales exceeded Stepanovich's. (Id.). Stepanovich had the leading gross sales revenues in 2011 and 2012; he had the second highest sales in 2013 and 2014; and he had the lowest sales in 2015 and 2016. (DSMF ¶ 21). Stepanovich stated that he "was tired of making the two of them money, and now it was their turn to pay me." (Doc. 26-1, p. 67) (internal quotation marks omitted).

In September 2016, prior to the start of the Fall growing season, Stepanovich went for his annual physical. (Doc. 26-1, p. 98). The doctor noted some irregularities in Stepanovich's lab work and ordered additional testing. (Id.). The doctor confirmed a diagnosis of prostate cancer in February or March 2017. (DSMF ¶ 7). The doctor recommended that Stepanovich undergo surgery in May 2017. (Doc. 26-1, p. 99). Stepanovich elected to postpone the surgery until July 20, 2017, so that the surgery and any recovery time would take place outside KCF's growing season. (Id. at p. 93, 96).

According to Stepanovich, in February or March 2017, he discussed his prostate cancer with Ken Corbett's wife and daughter-in-law during a reception at the Southeast Produce Counsel. (Doc. 35, ¶ 7). Stepanovich testified that on March 10, 2017, he informed Bolesta and Hunter about his cancer diagnosis.

(DSMF ¶ 8). However, he does not recall having a direct conversation with Ken Corbett about his diagnosis. (DSMF ¶ 9). Stepanovich also does not remember telling anyone at KCF that he would require time off work to address his medical condition. (Doc. 26-1, p. 93-94).

Prior to September 2016, Stepanovich had no history of any issues with his prostate. (Doc. 26-1, p. 101). He was experiencing no symptoms. (Id. at p. 102). Other than a six-week recovery period following surgery, Stepanovich otherwise experienced no physical symptoms. (Id. at p. 102, 104). He never missed a day of work with KCF because of his diagnosis. (DSMF ¶ 13). The prostate cancer did not impact his ability to perform any essential function of his job at KCF, nor was he substantially limited from engaging in any major life activity. (DSMF ¶ 12).

Around April 24, 2017, Ken Corbett spoke to the produce salesmen about the financial condition of KCF. (DSMF ¶ 25). Corbett revealed that the farm was losing money and explained that he needed to alter their pay structure. (DSMF ¶ 26). He also mentioned that he was considering hiring a fourth salesman. (Id.). The next day, Stepanovich emailed Corbett for clarification of Corbett's plan. (Doc. 26-1, p. 217). He expressed concern that the salesmen were not kept apprised of when the farm makes or loses money and that they lack opportunity to provide any input. (Id.). He also inquired whether KCF would restore the

salesmen's pay once the farm started making money again. (Id.). Stepanovich was particularly concerned about Corbett's intention to hire a fourth salesperson. (Id.). He asked whether the new person would bring his own book of business or if the existing salesmen would have to subsidize the new employee as he learned the business. (Id.). Stepanovich continued to press Corbett regarding pay, asking, "Since we are going to lose 25% of [our] pay, . . . maybe now we can get paid once money is collected and not whenever." (Id.).

Corbett contacted Stepanovich on April 26, 2017 and informed him that he was terminated. (DSMF ¶ 31). Corbett testified that he terminated Stepanovich in response to KCF's economic situation, explaining that he had "to do something to try to turn it around." (Id.). Corbett "didn't feel like [Stepanovich] had the commitment to turn the company around and move it forward. [He] felt like [Stepanovich] showed [him] that in his email." (Doc. 26-2, p. 50). Corbett denied knowing that Stepanovich had cancer when he made the decision to terminate him. (Id. at p. 18). Corbett testified that it was only after he received Stepanovich's charge of discrimination from the Equal Employment Opportunity Commission (EEOC) that his wife reminded him that she told him about Stepanovich's diagnosis after the produce show. (Id. at p. 20, 23). However, other than what his wife told him, Corbett has no independent recollection of the conversation. (Id. at p. 20).

KCF did not hire another salesperson until November 2017, seven months after Stepanovich's termination.[2] KCF hired Terry Wright exclusively to conduct brokerage sales. (DSMF ¶ 38). Wright brought with him an existing brokerage client and did not otherwise engage in direct farm sales. (DSMF ¶ 39).

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

---

[2] Stepanovich asserts that KCF hired Jon Latham as a salesman shortly after his termination. (Doc. 35, ¶ 18). However, Corbett states that KCF hired Latham a year later in April 2018 at a significantly lower salary than KCF paid Stepanovich. (Doc. 36-1, ¶ 3).

believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.   ANALYSIS

In his single-count Complaint, Plaintiff alleges that Defendant discriminated against him in his termination based on his disability, or perceived disability, in violation of the ADA. (Doc. 1, ¶¶ 1, 33-34).[3] Plaintiff's allegations fall short of

---

[3] In Paragraphs 22 through 24 of his Complaint, Plaintiff includes allegations that Defendant failed to accommodate his leave request. (Doc. 1). However, the record contains no evidence that Plaintiff ever requested leave or any other accommodation from KCF. Plaintiff has not offered any argument to the contrary. Accordingly, to the extent that Plaintiff intends to pursue an ADA failure to accommodate claim, Defendant is entitled to summary judgment as to that claim. See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) ("[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.").

setting forth a claim for unlawful termination under the ADA. The parties do not dispute that Plaintiff was diagnosed with prostate cancer shortly before his termination; but, Plaintiff has not presented sufficient evidence from which a reasonable jury could find that he was disabled as defined by the Act.

The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to . . . discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination, a plaintiff must produce sufficient evidence from which a jury may find that he (1) is disabled; (2) is a qualified individual; and (3) was discriminated against based on his disability. Mazzeo v. Color Resol. Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) (citing Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007)). If the plaintiff establishes his *prima facie* case, the burden then shifts to the defendant to present a legitimate, nondiscriminatory reason for its decision, after which the burden shifts back to the plaintiff to show that this reason is pretextual. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1375 (11th Cir. 1996) (citing McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973)); see also Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) ("The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.").

### A. Disability

Plaintiff's discrimination claim fails because Plaintiff cannot establish that his prostate cancer diagnosis, standing alone, meets the definition of "disability" under the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff has sufficiently demonstrated, for the purposes of his *prima facie* case, that he had a physical impairment. However, Plaintiff has not produced evidence sufficient to raise a genuine issue of fact whether that impairment impeded any major life activity; that he had a record of impairment; or that Defendant regarded him as disabled.

#### 1. Actually Disabled

"An individual who is 'actually disabled' is one with 'a physical or mental impairment that substantially limits one or more major life activities.'" Lewis v. City of Union City, 934 F.3d 1169, 1180 (11th Cir. 2019) (quoting 42 U.S.C. § 12102(1)(A)). The ADA defines a physical or mental impairment as a disorder or condition affecting one or more of the following body systems: "neurological, musculoskeletal, special sense organs, respiratory . . ., cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

"A physical impairment, standing alone, . . . is not necessarily a disability as contemplated by the ADA." Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 911 (11th Cir. 1996). Rather, "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity." 29 C.F.R. § 1630.2(j)(ii). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). To be considered substantially limiting, the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity." 29 C.F.R. § 1630.2(j)(1)(ii) "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." Id. at § 1630.2(j)(1)(iv). The assessment should take into consideration the condition, manner, or duration required for the individual to perform a major life activity. Id. at § 1630.2(j)(4).

The parties agree that Plaintiff's prostate cancer diagnosis qualifies as a physical impairment. See 29 C.F.R. § 1630.2(j)(3)(iii) ("[C]ancer substantially limits normal cell growth. . . ."). However, Plaintiff has not produced evidence sufficient to establish that this impairment limited his ability to perform any major life activity. To the contrary, Plaintiff testified that he never missed a day of work

relating to his cancer diagnosis; that he suffered no physical symptoms; and that he could perform all aspects of his sales job without limitation. (DSMF ¶¶ 11-13). Plaintiff accordingly has failed to produce sufficient evidence to raise a genuine issue of fact that he is "actually disabled" as defined by the ADA.

### 2. Record of Impairment

Plaintiff also has not shown a record of impairment. Federal regulations provide, "An individual has a record of a disability if the individual has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Whether an individual has a record of impairment that substantially limited a major life activity "shall be construed broadly" and "should not demand extensive analysis." Id. at § 1630.2(k)(2). The individual need only show that he "has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population." Id.

Before his September 2016 physical, Plaintiff showed no signs or symptoms of prostate cancer. (Doc. 26-1, p. 101-102). He had no history of any issues with his prostate. (Id. at p. 101). Plaintiff thus has not demonstrated a record of a physical impairment to satisfy the first prong of his *prima facie* case.

### 3. Regarded as Disabled

Under the ADA, an individual may establish that his employer regarded him as disabled if he shows that he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "[A]n employer that takes an adverse action because it fears the consequences of an employee's medical condition has regarded that employee as disabled." Lewis, 934 F.3d at 1182. Nevertheless, "[a]n employer does not fire or otherwise discriminate against an employee 'because of' a perceived physical impairment unless the employer actually perceives that the employee has the impairment." EEOC v. STME, LLC, 938 F.3d 1305, 1316 (11th Cir. 2019).

The parties dispute whether Ken Corbett knew about Plaintiff's cancer diagnosis prior to making the decision to terminate Plaintiff. Plaintiff admittedly does not recall engaging in a direct conversation with Corbett about his medical condition. (DSMF ¶ 9). Rather, he revealed his diagnosis to Corbett's wife a month or two before his termination. (Doc. 35, ¶ 7). He also discussed his prostate cancer and plan for surgery with the other two produce salesmen. (DSMF ¶ 8). Regardless of whether Corbett had direct knowledge of Plaintiff's cancer, the record contains no evidence that Corbett perceived Plaintiff to be

impaired or incapable of performing his job. Up until the date of his termination, Plaintiff was demonstrating no adverse symptoms; he had not missed work; and he otherwise was fully capable of performing his job duties. (DSMF ¶¶ 11-13). Plaintiff additionally reported to the other salesmen that he scheduled his surgery outside of Defendant's growing season. (DSMF ¶ 8). In other words, there is no evidence from which a jury could conclude that Corbett was concerned about the potential consequences of Plaintiff's cancer diagnosis and that he terminated Plaintiff for that reason.

Having failed to meet the first element of his *prima facie* case, Plaintiff's claim of disability discrimination must fail. Defendant accordingly is entitled to summary judgment on Plaintiff's ADA claim.

### B.  Discrimination Based on Disability

Even if Plaintiff could demonstrate that he meets the ADA's definition of "disabled", he still cannot make out a *prima facie* case of disability discrimination because he has not produced evidence that Defendant discriminated against him based on his cancer diagnosis.[4] "[B]uilt in to the 'regarded as' definition of disabled is an analysis of whether the employer subjected the employee 'to an action prohibited under this chapter because of an actual or perceived physical or mental impairment.'" Lewis, 934 F.3d at 1184 (quoting 42 U.S.C. § 1202(3)(A)).

---

[4] The parties do not dispute that Plaintiff was a qualified individual. Accordingly, the Court does not address that element of the *prima facie* analysis.

Thus, the evidence required to prove the "regarded as" definition generally "is duplicative of the evidence relevant to the third *prima facie* element." Id. (citing 29 C.F.R. § Pt. 1630, App. ("While a person must show, for both coverage under the 'regarded as prong' and for ultimate liability, that he . . . was subjected to a prohibited action because of an actual or perceived impairment, this showing need only be made once.")). Thus, for the same reasons the Court concluded that Plaintiff's evidence was insufficient to meet his *prima facie* burden on the "regarded as" element, the Court finds that Plaintiff's evidence is likewise insufficient on the causation element.

## IV.   CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 24).

**SO ORDERED**, this the 17th day of December, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks